

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-01019-CV

**IN THE INTEREST OF D.S.R.**, a Child

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-PA-00696
Honorable Linda A. Rodriguez, Judge Presiding

Opinion by: Irene Rios, Justice

Sitting: Irene Rios, Justice
Beth Watkins, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: May 1, 2024

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her child,
D.S.R.[1] Mother challenges the sufficiency of the evidence supporting the trial court's finding that
termination was in the child's best interest. We affirm.

### BACKGROUND

Mother has a long history with the Department of Family and Protective Services ("the
Department"). Mother's parental rights to D.S.R.'s two older siblings have already been
terminated due to concerns of domestic violence and Mother's substance abuse. The Department

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the parents as "Father" and "Mother" and we refer to the child using its initials or as "the child." *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2). Although the trial court's order terminated Mother's and Father's parental rights to the child, only Mother appeals.

became involved in the underlying case in April 2022, when it received a referral alleging Mother was using methamphetamines while caring for the child.

On April 29, 2022, the Department filed a petition seeking temporary managing conservatorship of the child and termination of Mother's parental rights. On October 6, 2023 and November 2, 2023, the trial court held a bench trial. The trial court heard testimony from: Lynsey McCarley, the Department's removing investigator; Leah Jarma, the Department's caseworker until February 2023;[2] Monica Chavez, the Department's caseworker from August 2023 to October 2023; D.S.R.'s foster father;[3] and Mother. The trial court also heard a report from the child's guardian ad litem.

On November 22, 2023, the trial court signed an order terminating Mother's parental rights to D.S.R. The trial court terminated Mother's parental rights based on statutory grounds (D), (E), (O), and (P) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (O), (P). The trial court also found it was in the child's best interest to terminate Mother's parental rights. *See id.* § 161.001(b)(2). Mother appeals.

**STATUTORY REQUIREMENTS AND STANDARD OF REVIEW**

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

---

[2] Leah Jarma testified she had been working with Mother since August 2021. Jarma was the caseworker in the case involving Mother's two older children and continued to work with Mother in the instant case after D.S.R. was removed from the home.

[3] To protect the identity of minor children, we refer to D.S.R.'s foster father as "Foster Father."

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's factual determinations and judgment regarding credibility. *J.F.-G.*, 627 S.W.3d at 312; *see also In re R.R.A.*, No. 22-0978, 2024 WL 1221674, at *7 n.50 (Tex. Mar. 22, 2024) ("Reviewing courts, however, must defer to the factfinder's judgment as to the credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence.").

## BEST INTEREST

Mother argues the evidence is legally and factually insufficient to support a finding that termination of her parental rights is in the child's best interest.

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[4]

---

[4] These factors include:

(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child;

*See id.* § 263.307(b).  We also consider the *Holley* factors.[5]  *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  These factors are not exhaustive.  *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).  "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child."  *Id.*  In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent.  *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest.  *C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest).  "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well

---

(4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

[5] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

In determining the best interest of a child, the trial court considers "whether there is a history of substance abuse by the child's family or others who have access to the child's home[.]" TEX. FAM. CODE ANN. § 263.307(b)(8). "[E]ndangering conduct is not limited to actions directed towards the child." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). "A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent." *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.).

Here, the child came into the Department's care due to concerns of Mother's illegal drug use and concerns of domestic violence in the home. *See In re K.M.*, No. 04-08-00037-CV, 2008 WL 2923655, at *2 (Tex. App.—San Antonio July 30, 2008, pet. denied) (mem. op.) (holding a parent's illegal substance abuse "places her children in emotional and physical danger"). The trial court heard testimony that Mother already had a pending case with the Department where her two oldest children were removed from the home due to Mother's illegal drug use and concerns of domestic violence. *See In re S.L.W.*, No. 04-22-00425-CV, 2023 WL 28451, at *5 (Tex. App.—San Antonio Jan. 4, 2023, pet. denied) (mem. op.) (alteration omitted) ("A parent's criminal activities and history are relevant to a best-interest analysis."). While D.S.R.'s case was pending, Mother gave birth to a fourth child who was removed at birth because she was born with amphetamines in her system. Although the evidence reflects Mother may have resolved her issues with domestic violence by ending her relationship with D.S.R.'s father, the Department's continuing concern was Mother's failure to address her struggle with substance abuse.

Lynsey McCarley, the Department's removing investigator, testified she met with Mother in April 2022 to discuss the Department's concerns around the time D.S.R. was removed from the

home. Mother admitted to using methamphetamines five days prior to that meeting. The child was approximately three months old at that time. McCarley stated the Department removed the child because Mother continued to use methamphetamines while caring for D.S.R. At that time, Mother was not in compliance with drug testing for the open case regarding the two older children.

Leah Jarma was the Department's caseworker for the pending case with the older children and was also assigned as the caseworker for D.S.R.'s case. Jarma testified she had worked with Mother from August 2021 until she was reassigned in February 2023. Jarma stated Mother's rights to the two older children were ultimately terminated.

The Department made a service plan for Mother to address the concerns that led to D.S.R.'s removal. Jarma testified Mother participated in creating the service plan, Mother signed the service plan, she received a copy of the service plan, the service plan was filed with the court, and it was made an order of the court. Mother was informed that failure to complete her services could result in termination of her parental rights. According to her service plan, Mother was required to show proof of stable housing and employment, remain free from criminal activity, attend visitation with the child, complete a drug assessment and follow all recommendations, pass random drug tests, participate in individual counseling, and participate in and complete parenting classes and domestic violence classes. The trial court heard testimony that Mother successfully completed her parenting classes, domestic violence classes, and attended nearly all visits with the child. However, Mother was required to complete drug treatment following a recommendation from her drug assessment. As more fully explained below, Mother did not complete drug treatment and missed some drug tests, there was conflicting evidence on whether Mother had stable housing and employment, and there were long periods where Mother disengaged from individual counseling.

"Illicit drug use is relevant to multiple *Holley* factors, including the child[]'s emotional and physical needs now and in the future, the emotional and physical danger to the child[] now and in

the future, Mother's parental abilities, the stability of Mother's home, and the acts or omissions which may indicate an improper parent-child relationship." *In re A.N.*, No. 04-19-00584-CV, 2020 WL 354773, at *3 (Tex. App.—San Antonio Jan. 22, 2020, no pet.) (mem. op.). Jarma testified that Mother remained sober while she was the caseworker; however, Jarma also stated Mother missed "a few" drug tests. When Mother missed a drug test because she had insufficient hair to provide for the test, the trial court ordered Mother to take a drug test using a sample from her fingernail. Jarma testified Mother was unable to take the nail test because her fingernails were not long enough to take a sample on the day of the test. Jarma explained Mother knew she would be asked to take drug tests using samples of her hair and indicated she knew she should not have maintained a hairstyle that would make it impossible to conduct the test. The trial court could have reasonably inferred that Mother shaved her head and cut her nails short to avoid drug testing because she was using drugs. *See R.R.A.*, 2024 WL 1221674, at *7 n.50 (holding a reviewing court must defer to the factfinder's judgment regarding the credibility of witnesses and the weight to give their testimony, "including reasonable and logical inferences from the evidence"); *In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) ("The trial court also could have reasonably inferred that [a parent's] failure to appear for drug testing indicated that [the parent] was avoiding testing because [the parent] was using drugs."). However, Jarma conceded Mother passed a urinalysis test when she was unable to provide the nail sample. Jarma's testimony indicated Mother missed additional drug tests, but "[m]ost of them were the hair . . . and nail testing."

Jarma expressed concern that Mother failed to complete drug treatment and had not demonstrated adequate sobriety over the course of the two cases removing her first three children, and Mother's fourth child was removed because she was born with drugs in her system. Mother claimed she had a prescription for Adderall that she took while she was pregnant with D.S.R.'s

younger sibling. Mother testified the Adderall caused the positive result for amphetamines in the younger child's system at birth. However, Mother was unable to provide any of her caseworkers with a prescription for the Adderall because, according to Mother, she received the prescription years ago. Mother stated she did not know taking Adderall while pregnant could be harmful to her child and conceded she did not consult her doctor before taking Adderall. Mother also admitted to using methamphetamines after D.S.R. was born but claims she never used drugs in the child's presence or while caring for the child.

According to Jarma, Mother was not consistent in working her services because she would start and stop services multiple times. Jarma explained Mother would have issues with attendance in her drug treatment programs. Although Mother claimed she didn't have transportation to the sessions, she also told Jarma she could use public transportation. Jarma stated she did not believe Mother has learned from her services because there has been "a lack of changed behavior" in the three years the Department has been involved with Mother and her children. Specifically, in this case, D.S.R. was removed eighteen months before trial and Mother still has not fully addressed the concerns that led to removal. Jarma opined Mother's continuous pattern of unchanged behavior is dangerous to the child's physical and emotional well-being, and Mother's failure to address her substance abuse endangers the child. Therefore, Jarma testified it was in the child's best interest for Mother's parental rights to be terminated.

Monica Chavez, the Department's caseworker since August 2023 echoed Jarma's concerns. Mother was not engaged in any of her services when Chavez was assigned to the case. Mother claimed she could not enroll in drug treatment because her referral had expired. Chavez, however, confirmed with the provider that Mother's drug treatment referral was not expired. Chavez stated Mother did not even attempt to engage in drug treatment until the last week of September. Mother also testified she could not engage in drug treatment sooner because there was

a waiting list to start the service. Chavez rebutted this testimony, stating there was not a waiting list for drug treatment. Mother testified on the first day of trial that she had started one session of drug treatment and would attend three sessions per week going forward.

The trial recessed for approximately a month. When trial resumed, Chavez testified that Mother missed multiple drug treatment sessions following the first day of trial while Mother testified she hadn't missed any drug treatment sessions. Chavez also testified Mother failed to acknowledge her substance abuse issues, had not completed drug treatment, and was inconsistent with her services.

Further, the trial court heard conflicting testimony on whether Mother had stable housing and employment. "Evidence of a parent's unstable lifestyle can . . . support a factfinder's conclusion that termination is in the child's best interest." *In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.). Jarma testified Mother maintained stable housing while she was assigned to the case; however, Mother experienced housing instability in February 2023. Chavez testified she had not received proof of stable housing. Mother's testimony regarding housing was contradictory. On the first day of trial, Mother testified she had just moved into a new apartment. Then, she testified the apartment complex was trying to find her a unit to move into and she was staying with a friend while they got her unit ready. When asked whether she had a lease, Mother stated she did not because she had not moved in yet. On the second day of trial, which resumed approximately one month later, Mother testified she provided a lease to her caseworker that was signed on October 17, 2023. Chavez testified she contacted the apartment manager and was informed Mother did not have a lease for an apartment.

Regarding stable income, Jarma testified Mother provided a few paystubs from January 2022 to September 2022, but "quite a few months" were missing. Although Mother claimed to be employed when Jarma left the case in February 2023, Jarma stated she could not

confirm Mother's employment because Mother did not provide Jarma with paystubs for this period. Mother testified she was working as a housekeeper at a motel at the time of trial. She stated she had been there for three months and prior to that she worked at a call center. Mother claimed she was having difficulty getting the paystubs from her employer and was waiting until she had all of her paystubs to give them to the caseworker. However, Mother also testified she sent paystubs to her attorney. Chavez testified Mother has not provided her with paystubs or any other proof of stable income.

Though the record reflects Mother was generally compliant with attending individual counseling, there were periods where Mother disengaged. The trial court heard conflicting testimony as to why Mother disengaged from counseling for periods of time. Jarma testified Mother was actively working her services when Jarma left the case in February 2023. However, the trial court heard testimony that Mother disengaged in counseling in May 2023. Mother claimed the counselor ended the sessions because D.S.R. was going to be reunified with Mother and there was no reason to continue treatment. When the case was extended, Mother claimed she did not know she needed to re-engage in counseling. Chavez, on the other hand, testified Mother told the counselor she would have to cease counseling sessions because Mother was going to inpatient drug treatment. However, Mother chose to engage in outpatient drug treatment. Mother conceded she only attended two counseling sessions from May 2023 to October 2023.

Mother's testimony regarding her support system was also inconsistent. *See* TEX. FAM. CODE ANN. § 236.307(b)(13) (listing "whether an adequate social support system consisting of an extended family and friends is available to the child" as a factor considered by the trial court when considering a child's best interest). Mother testified on the first day of trial that her support system consisted of her boyfriend's mother and sister. However, on the second day of trial, she testified that her support system consisted of a close friend and co-worker. Further, Chavez testified that

Mother told her she did not have a support system and the children may need to stay in foster care if she is unable to care for them.

As the factfinder, the trial court was entitled to disbelieve Mother's self-serving and oftentimes contradictory testimony regarding her drug use, housing and income stability, counseling, and support system. *See In re E.A.M.V.*, No. 04-18-00866-CV, 2019 WL 1923214, at *4 (Tex. App.—San Antonio May 1, 2019, pet. denied) (mem. op.) (explaining a trial court could have disbelieved a parent's testimony, and we defer to the factfinder on witness credibility issues). Instead, the trial court could have attached greater weight to the testimony of the Department's caseworkers who testified Mother often started and stopped services, Mother failed to complete drug treatment despite a history of substance abuse, and Mother did not show proof of stable income and housing. *See J.F.-G.*, 627 S.W.3d at 312 (holding a reviewing court defers to the trial court's factual determinations and judgment regarding credibility).

In contrast, D.S.R. is placed in the same foster home as his little sister and he has been in that placement since he was five months old. Jarma testified D.S.R. is bonded with his foster family and they have been meeting all his needs. Chavez confirmed the foster parents were meeting the child's basic needs and he was current with all his medical, dental, and vision appointments. When Jarma recalled D.S.R.'s interaction with his foster parents, she observed: "He was a happy child" with the foster parents. "He sought [them] for comfort. He loved playing with them, cuddl[ing] with them, giv[ing] hugs and kisses[,]" and he was in "a very, very loving home." Chavez also testified D.S.R. appears "[v]ery happy" with his foster parents. According to Chavez, D.S.R. "has a strong bond with foster dad." She continued: "He's also bonding with his sister in the home. He likes to be involved. I've seen when foster dad has been feeding his baby sister, and he tries to help." Chavez stated that Foster Father is able to calm D.S.R. down when he throws a tantrum.

Foster Father testified D.S.R. had breathing issues and severe eczema when he came into his care. The foster parents made appointments and followed advice to address these concerns, and D.S.R. received some occupational therapy while in the foster parents' care. According to Foster Father, D.S.R. is thriving in the foster home, D.S.R. is bonded to his little sister, and both children are bonded to the foster parents. Finally, Foster Father testified he can provide D.S.R. with stability: a home to come to every day, food on the table, proper clothing, and support and unconditional love. Chavez further testified the foster home is a safe and stable environment, and the foster family is willing to adopt D.S.R. Foster Father confirmed the family's desire to adopt D.S.R.

While the trial court did hear some testimony that Mother was able to remain sober for periods of time and she had a negative drug test, the record also reflects Mother failed to engage in drug treatment despite her prolonged struggle with substance abuse. *See J.O.A.*, 283 S.W.3d at 346 (holding "evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices"). The trial court could have considered Mother's inconsistency with finishing her services, her failure to successfully complete drug treatment, and the testimony that Mother did not have stable housing and income as conduct that subjects the child to a life of uncertainty and instability. *See In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) (citing *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied)) ("As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child."); Tex. Fam. Code Ann. §§ 263.307(b)(10), (12) (stating whether a parent demonstrates adequate parenting skills and a parent's willingness and ability to cooperate with and facilitate an appropriate agency's close supervision as best-interest factors considered by the trial court); Tex. Fam. Code Ann. § 263.307(b)(11) (stating "the willingness and ability of the child's

family to effect positive environmental and personal changes within a reasonable period of time" is a best-interest factor considered by the trial court).

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in D.S.R.'s best interest. *See id.* § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing a reviewing court need not detail the evidence if affirming a termination judgment). Accordingly, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding.

## CONCLUSION

We affirm the trial court's order terminating Mother's parental rights to the child.

Irene Rios, Justice